```
              IN THE UNITED STATES DISTRICT COURT FOR
              THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                   *
DENNIS WILLIAMS, et al,
                                   *
       Plaintiffs,
                                   *
v.                                      CIVIL NO.: WDQ-03-CV-0027
                                   *
BP PRODUCTS NORTH AMERICA,
INC.                               *

                                   *
       Defendants.
                                   *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

## Memorandum Opinion

Dennis Williams sued BP Products North America, Inc. ("BP") for terminating his franchise in violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, *et seq.* Pending is BP's motion for judgment after trial or for a new trial.  Also pending are Williams' motions for exemplary damages and for attorney's fees.  For the following reasons BP's motion for judgment after trial or for a new trial will be denied. Williams' motions for exemplary damages will be denied; his motion for attorney's fees will be granted.


I.  Background

Williams sued BP under the PMPA alleging that: 1) grounds did not exist to terminate his franchise; 2) the grounds given for the termination were pretextual; 3) BP violated the notice

requirements of the PMPA; and 4) BP unlawfully placed a new dealer in the service station within 30 days of Williams' termination.

The case went to trial on October 24, 2005, and on November 1, 2005 the jury returned a verdict in favor of Williams, awarding him $390,000 in damages.  The jury found that although grounds existed for the termination of William's franchise, BP violated the PMPA by not giving Williams 90 days notice and by establishing a new franchise relationship within 30 days of his termination.

II.  BP's Motion for Judgment After Trial or a New Trial

BP has moved for judgment after trial pursuant to Federal Rules of Civil Procedure 50 or for a new trial under Rule 59 arguing that: 1) the jury's damage award is excessive because the damages are not limited to the notice period; and 2) there was no basis for the jury's finding that BP violated the PMPA.  Williams argues in response that: 1) his damages should not be limited to the notice period; 2) the jury's damage award is reasonably based on the evidence presented; and 3) the evidence supported the jury's finding that BP violated the PMPA.

A.  Standard of Review

Under Rule 50, a court should render judgment after trial as

2

a matter of law "when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133,149 (2000).  A court reviews the evidence in the record, and draws all inferences in favor of the nonmoving party.  *Id* at 150.  In doing so, however, the court may not make credibility determinations or weigh the evidence.  *Id.*

Under Rule 59, the award of excessive damages may warrant granting a new trial if: 1) the verdict is against the clear weight of the evidence, or 2) is based upon evidence which is false, or 3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.  *Konkel v. Bob Evans Farms Inc.,* 165 F.3d 275 (4th Cir. 1999); *Cline v. Wal-Mart Stores, Inc.,* 144 F.3d 294, 301 (4th Cir. 1998).  In making its decision, the court may weigh the evidence and consider witness credibility.  *Cline,* 144 F.3d at 301.


B.  Excessive Award

BP argues that the jury's damage award of $390,000 is excessive because damages should have been limited to the damages suffered by Williams during the notice period and because the damage models Williams offered at trial were fatally flawed.

Section 2802 of the PMPA provides that no franchisor may terminate a franchise prior to the conclusion of the contractual term unless "(A) the notification requirements...are met; and (B) such termination is based upon a ground described in paragraph 2..." 15 U.S.C. § 2802(b)(1)(A),(B).  Therefore, a franchise is wrongfully terminated if a franchisor does not abide by the notice provisions of the PMPA.

In deciding that BP had violated the PMPA's notice provision, the jury decided that BP was not legally permitted to terminate Williams' franchise in February, 2002.  As Williams would not have lost his franchise at that time but for BP's illegal termination, and because Williams might have taken action during the 90 days notice period to preserve his franchise, the Court finds that the jury could compensate Williams for the value of his lost franchise.[1]

BP further argues that the jury award should be set aside because the testimony of Williams and his expert, Richard Olsen, failed to offer a legally viable damage model.  Specifically, BP argues that: 1) neither Olsen nor Williams opined on the damages

---

[1]Although BP cites Maryland caselaw in support of its argument that damages in notice termination disputes are limited to those suffered during the contractual notice period, none of the cited cases involved violations of the PMPA.  In the single PMPA case BP cites in its Reply brief, *Lippo v. Mobil Oil Corp.,* 776 F.2d 706 (7th Cir. 1985), the franchisee obtained injunctive relief when the franchisor attempted to terminate its franchisee in violation of the PMPA and, therefore, never lost its franchise.

Williams suffered during the notice period; 2) Olsen based his opinion on the loan amount Williams used to enter into the trial franchise agreement, not the lease agreement; 3) Williams' damages as guarantor of Pinnacle Petroleum's loan are derivative of Pinnacle's dismissed claims; and 4) Williams' evaluation of the franchise's value lacked evidentiary support.

As noted above, Williams can recover for the loss of his franchise, not merely the losses suffered during the notice period.  Therefore, Williams and Olsen could opine on damages based on the franchise's termination.

Although BP challenged the methodologies and factual basis of Olsen's and Williams' opinions, the Court found both sufficiently reliable to allow them to testify.  Olsen, a trained economist opined that Williams suffered $331,725 in damages under a lost investment theory of damages.  Olsen based his opinion on his study of the franchise's financial statements, the local market, and his knowledge of the economic realities of small start-up enterprises.

Williams opined that his franchise was worth at least $400,000 at the time it was terminated based on his evaluation of its location, the local market, ancillary revenue streams (i.e. repair bays, snack bar) and its potential to sell 300,000-350,000 gallons of fuel per month.  Def.'s Motion to Alter Judgment, Ex. 1, p. 73-74.  Williams conceded on cross examination that the

franchise operated at a loss but testified that his opinion was based on the potential value of the franchise which had, at times, sold 300,000-350,000 gallons of fuel per month.

 As BP did not offer rebuttal evidence as to the franchise's value, and because the jury's award reflected Williams' and Olsen's testimony, the Court finds that there was a sufficient evidentiary basis for the jury's damage award.  Accordingly, the Court will deny BP's motion for a new trial.


C.  Evidentiary Basis to Support Jury's Finding of PMPA Violation

 BP argues that there was no evidentiary basis to support the jury's decision that BP provided insufficient notice prior to termination.  Therefore, BP argues, it should be granted judgment after trial or a new trial.

 It is undisputed, however, that BP provided less than 90 days notice of termination in violation of the PMPA.  Although § 2804 allows for less than 90 days notice when it would be unreasonable, the jury rejected this argument based on, *inter alia,* evidence that Williams was not in arrears on his payments to BP (arrears which BP claimed justified his termination) and the fact that as of February 20, 2002, Williams was prepaying for his fuel shipments (thereby minimizing BP's financial exposure). Drawing all inferences in favor of Williams, the Court finds that there was sufficient evidentiary support for the jury's decision

6

that BP's decision to provide less than 90 days notice was
unreasonable.


D.  Conclusion

For the reasons noted above the Court will deny BP's motion
for judgment after trial or a new trial.


III.  Motion for Exemplary Damages

The PMPA provides that a franchisee that prevails at trial
may be awarded exemplary damages if the franchisor acted in
"willful disregard of the requirements of section 2802 and
2803...or the rights of the franchisee thereunder."  15 U.S.C. §
2805(d)(1)(B).  "Willfulness," under the PMPA, is conduct
"pursued with a consciousness of wrongdoing or with a considered
disregard to whether it violates the Act."  *Eden v. Amoco Oil
Company, Inc.*, 741 F.Supp. 1192 (D.Md. 1990).  Although there is
no requirement of malicious intent, willfulness requires guilty
knowledge or imputed guilty knowledge.  *Robinson v. Lee-Moore oil
Company*, 2002 WL 31769789, slip op. (M.D.N.C. 2002).

Determinations of whether exemplary damages will be awarded
and the amount is determined by the Court, not by the jury.  15
U.S.C. § 2805(d)(2).  However, courts are reticent to award
exemplary damages "absent a clear and affirmative showing of a
deliberate and intentional act."  *Mustang Marketing, Inc., v.*

7

*Chevron Products Co.,* 406 F.3d 600 (9th Cir. 2005).

Williams contends that he is entitled to exemplary damages because of BP's "plain indifference" to the PMPA when it failed to provide him 90 days notice and entered into a new franchise agreement less than 30 days after his termination.  BP argues in response that: 1) it reasonably believed the 90 day notice requirement could be ignored; 2) it acted on the advice of counsel; and 3) it quickly canceled the dealer agreement with Williams' successor when it realized it was in violation of the 30 day waiting period.


A.  Notice Requirement

As noted above, § 2804 of the PMPA provides that a franchisor must provide 90 days notice of termination unless such notice would be unreasonable.  15 U.S.C. § 2804(b)(1)(A).

BP contends that because Williams failed to operate the franchise for an extended period of time and to pay for fuel shipments on time, it was reasonable for BP to dispense with the 90 day notice requirement and provide notice as soon as "reasonably practicable" under § 2804(b)(1)(A).

Although the jury found that BP's actions violated the PMPA, given the circumstances (Williams alleged failure to operate the station for more than a week and to pay for fuel shipments), BP's reliance on § 2804(b)(1)(A) after consultation with counsel does

not appear so unreasonable as to indicate a conscious disregard or willful indifference to the PMPA.  Accordingly, BP's failure to provide Williams 90 days notice of termination does not justify the award of exemplary damages.

B.  Waiting Period

     Under § 2804, a franchisor may not enter into a new franchise agreement within 30 days of the termination of the previous franchisee.  15 U.S.C. § 2804(b)(1)(B).  The jury found that BP violated § 2804 when it entered into a franchise agreement with Sajid Tarar only six days after it terminated Williams.

     Although BP violated the PMPA when it contracted with Tarar, it terminated that agreement five days later when it realized it was in violation of the PMPA.  This prompt termination indicates BP made a mistake (which it quickly corrected) rather than intentionally violated the statute.  Accordingly, BP's violation of the 30 day waiting period does not support an award of exemplary damages.

C.  Conclusion

     For the reasons noted above, Williams' motion for exemplary damages will be denied.

Case 1:03-cv-00027-WDQ   Document 134   Filed 02/15/06   Page 10 of 16

IV.   Motion for Attorney's Fees

Williams has moved for $285,573.00 in attorney's fees[2], $28,791.07 in expert witness fees, and $7,792.32 in costs for a total of $ $322,156.39.   BP argues in response that the request should be denied because Williams failed to submit quarterly statements to BP's counsel.   In the alternative, BP argues that if fees are awarded, the amount requested should be reduced because: 1) Williams did not prevail on all issues; 2) he requests fees for duplicative work; 3) his expert witness was unnecessary; and 4) the non-taxable costs requested are not separately compensable.

A.   Entitlement to Attorney's Fees

Under § 2805(d)(1)(C), a prevailing franchisee "shall be entitled...to reasonable attorney and expert witness fees to be paid by the franchisor, unless the court determines that only nominal damages are to be awarded to such franchisee...."   15 U.S.C. § 2805(d)(1)(C).   As Williams prevailed on his PMPA claim and was awarded $390,000 in damages, he is entitled to the award

---

[2] Williams' fee request reflects: 413.8 hours of work by Harry Storm at $325.00 per hour; 518.6 hours by co-counsel James Parsons at $250.00 per hour; 101.2 hours by associate William Goldberg at $185.00 per hour; 11 hours by associate Jennifer Thomas at $185.00 per hour; 19.3 hours by associate Jeremy Tucker at $185.00 per hour; 31.4 hours by paralegal Po Saidi at $80.00 per hour; and 30.7 hours by paralegal Elaine Planoz at $80.00 per hour.

of attorney's fees.

BP has argued, however, that even if Williams is entitled to fees under the PMPA, they should not be awarded because he failed to submit quarterly statements to BP in violation of Appendix B of the Local Rules.  Williams responds that Appendix B is inapplicable to the fee shifting provision of the PMPA.

Appendix B applies to cases in which a prevailing party would be entitled to fees under various civil rights statutes such as the Civil Rights Act, the Age Discrimination in Employment Act and the Americans With Disabilities Act.  The PMPA is not listed under Appendix B nor are any other fee shifting statutes that govern contractual business relationships. Although BP points out that attorney's fees under the PMPA are calculated in the same way as civil rights fee shifting provisions, it has offered no caselaw to support its contention that the PMPA is one of the statutes governed by Appendix B. Accordingly, Williams will be awarded attorney's fees.


B.  Amount of Fees Awarded

As the PMPA is a fee shifting statute, reasonable attorney's fees are determined by multiplying the number of hours reasonably expended by a reasonable rate (the "lodestar" method).  *Cerason v. Motiva Enterprises,* 2002 WL 32175199 (D.Conn. 2002); *see also Hensley v. Eckerhart,* 461 U.S. 424 (1983)(lodestar method used

11

for calculating attorney's fees in § 1988 claim).   In calculating
what amount is reasonable, fees for excessive or redundant work
and fees charged for work on unsuccessful claims are excluded.
*Id.*

BP argues that even if Williams is awarded attorney's fees,
the amount requested should be reduced because: 1) he did not
prevail on all issues; 2) he requests fees for unnecessary and
duplicative work; 3) his expert witness was unnecessary; and 4)
the non-taxable costs requested are not separately compensable.

1.  Fees for Work on Unsuccessful Claims

As Williams did not prevail on all three of his claims, BP
argues that fees charged for work on his unsuccessful claim
should not be awarded.

In determining the amount of fees awarded in cases in which
a plaintiff is only partially successful, courts look to the
relationship of the successful and unsuccessful claims.  *Certain
v. Potter,* 330 F.Supp.2d 576,584 (M.D.N.C. 2004).   When the
plaintiff's claims involve a common core of facts or related
legal theories, the attorney's time is considered to have been
devoted to the litigation as a whole, making it difficult to
divide the hours expended on a claim by claim basis.  *Certain,*
330 F.Supp.2d at 584 (*quoting Hensley,* 461 U.S. at 435).   "In
that case the district court should focus on the significance of

12

the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

Williams' claim that BP's failure to give him 90 days notice of termination was unreasonable turned on the facts surrounding the termination of his franchise agreement (i.e. his failure to operate the station for more than seven days and his failure to make timely payments for fuel shipments). All three issues in Williams complaint turned on whether BP terminated his franchise in accordance with the statutory requirements of the PMPA. Therefore, Williams' successful and unsuccessful claims involved common issues of law and fact. As Williams was successful on two of his three claims and awarded $390,000 in costs, he will be awarded fees for the litigation as a whole.

2. Fees for Duplicative and Unnecessary Work

BP argues that much of the work performed by plaintiff's counsel was duplicative and, therefore, should be subtracted from any fees awarded. BP points to several billing entries by Mr. Storm and Mr. Parsons that show both lawyers drafting motions and attending intra-office meetings, depositions and conferences with opposing counsel. BP argues that charges for this work are indicative of a pattern of unnecessary and redundant billing and should not be reimbursed.

However, the fact that two senior attorneys represented

13

Williams and shared in the responsibilities of bringing his case to trial does not necessarily indicate duplicative billing. Given the size of the defendant corporation and its legal team (BP was represented by in house counsel and three lawyers from McGuire, Woods LLP), staffing Williams' case with two attorneys appears reasonable.  The specific incidents that BP points to as evidence of a pattern of duplicative billing show that Mr. Parsons and Mr. Storm were meeting with each other, attending meetings with their client and reviewing the same reports, depositions and motions.  As both lawyers were responsible for litigating Williams' claim and given the complexity of the case, their charges were not unreasonable or unnecessary.[3]

BP also argues that fees requested for work related to Williams expert witness, Richard Olsen, should be subtracted from any fee award because Olsen's testimony was of no use to the jury.

As noted above, Olsen was found sufficiently credible to testify as an expert witness and the jury heard his testimony and weighed his credibility.  It is reasonable to assume that the

---

[3] BP cites *Essex v. Randall,* 2006 WL 83424, slip op. (D.Md 2006) for the proposition that Williams' should not be reimbursed for both lawyers attendance at intra-office conferences. However, *Essex* dealt with the application of Appendix B of the Local Rules in an ERISA case.  As noted above, however, the Court has decided Appendix B above does not apply to the PMPA. Furthermore, the district court in *Essex* allowed that multiple lawyers could be reimbursed for their time at conferences held for the purposes of litigation management.  *Essex,* 2006 WL 83424.

jury chose to award Williams $390,000 based, at least in part, on Olsen's testimony that Williams had suffered damages of $331,725. Therefore, the Court does not find that time spent by Williams' lawyers retaining, deposing and questioning Mr. Olsen was unnecessary.  Accordingly, Williams will be awarded the attorney's fees requested.


3.  Expert Witness Fees

     BP further argues that Williams is not entitled to recover Olsen's fees.  Section 2805(d)(1)(C) of the PMPA, however, explicitly provides for the award of expert witness fees.  As noted above, the jury heard Mr. Olsen's testimony and it is not unreasonable to conclude that it considered his testimony in deciding to award Williams $390,000 in damages.  Accordingly, the Court will award Williams the expert witness fees requested.


4.  Costs

     Williams seeks costs of $7,792.32 for legal research, postal expenses, travel expenses, parking and mileage.  BP argues that reimbursement for these costs are not provided for under the PMPA, local rules, or the Federal Rules of Civil Procedure. However, reasonable attorney's fees under the PMPA "should include out of pocket expenses billed to a client."  *Zacharias v. Shell Oil company,* 627 F.Supp. 31 (E.D.N.Y. 1984).  As expenses

15

such as transportation, research and postal fees would ordinarily be charged to a client, the $7,792.32 in transportation, research and postal expenses incurred by Williams' lawyers will be reimbursed as part of reasonable attorney's fees.

V.  Conclusion

     For the reasons stated above, BP's motion for judgment after trial or for a new trial will be denied.  Williams' motion for exemplary damages will be denied; his motion for attorney's fees will be granted.


February 15, 2006                          /s/
Date                            William D. Quarles, Jr.
                                United States District Judge